*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JANICE L. PARK, | ) |
| | ) Supreme Court No. S-17743 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-19-09443 CI |
| v. | ) |
| | ) O P I N I O N |
| JESSICA J. SPAYD, | ) |
| | ) No. 7594 – May 20, 2022 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter R. Ramgren, Judge.

Appearances: Janice L. Park, pro se, Anchorage, Appellant. Steven M. Wells, Steven M. Wells, P.C., Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

BORGHESAN, Justice.

## I.     INTRODUCTION

In 2019 a woman sued her former husband's medical provider, alleging that from 2003 to 2010 the provider negligently prescribed the man opioid medications, leading to his addiction, damage to the couple's business and marital estate, the couple's divorce in 2011, and ultimately the man's death in 2017. The superior court ruled the claims were barred by the statute of limitations and rejected the woman's argument that the provider should be estopped from relying on a limitations defense. Because the

undisputed evidence shows that by 2010 the woman had knowledge of her alleged injuries, the provider's alleged role in causing those injuries, and the provider's alleged negligence, we conclude that the claims accrued at that time and were no longer timely when filed in 2019. And because the record does not show that the woman's failure to timely file her claims stemmed from reasonable reliance on fraudulent conduct by the provider, we conclude that equitable estoppel does not apply. We therefore affirm summary judgment in the provider's favor.

## II.     FACTS AND PROCEEDINGS

Janice Park was married to Jalal Keith Husseini.[1] The couple initiated a divorce in 2007, which was finalized in 2011 (after an appeal to this court[2]), with Husseini owing Park a substantial sum. Husseini died of a drug overdose in 2017, apparently without paying this debt to Park.

In October 2019 Park, representing herself, sued Jessica Spayd in superior court. According to the complaint Spayd, a registered nurse, had recently been arrested by federal authorities for unlawfully distributing opioid medications. Park alleged that Husseini had been a patient of Spayd's and that beginning in 2003 Spayd had overprescribed opioid medications to Husseini, who became dependent on them. Park alleged that by 2005 she was "distraught" over Husseini's dependence on opioids and that in 2007 she reported Spayd's prescription practices to authorities at the Alaska Department of Commerce's Board of Nursing. Park alleged that "[a]s a direct and

---

[1]     Our discussion of negligence, injuries, and other alleged facts in this case are drawn solely from Park's allegations. Because the superior court resolved the case on summary judgment, we assume the truth of the facts alleged in Park's pleadings and affidavits for purposes of this appeal. We note that Spayd expressly declined to admit any of those allegations as true.

[2]     *Husseini v. Husseini*, 230 P.3d 682 (Alaska 2010).

proximate result of the emotional and physical addiction from which Husseini suffered, he and Park fought over his addiction, ultimately ending the marriage"; further, the "value of the marital estate diminished as the direct and proximate result of Husseini's drug dependence and reliance upon Spayd for his supply." The complaint alleged that Spayd was liable under theories of negligence and professional malpractice for damages including medical expenses; "[l]ost business and marital property"; "[l]oss of consortium[,] anxiety, fear, and other emotional distress;" and "[l]oss of [Park's] court[-] ordered marital settlement."

Spayd filed a motion for summary judgment asserting that the limitations period for Park's claims had expired and that the case should be dismissed. Spayd argued that Park's claims were untimely under either the two-year limitations period applicable to tort claims[3] or the six-year period applicable to certain professional malpractice claims.[4] Spayd invoked the "discovery rule," under which "the cause of action accrues when the plaintiff has information sufficient to alert a reasonable person to the fact that he has a potential cause of action."[5] Spayd maintained that Park herself had alleged that by 2005 she was aware she was being harmed by Husseini's addiction and that by 2007 she had become suspicious enough of Spayd's prescribing practices to alert licensing authorities. Accordingly, Spayd argued, Park was on inquiry notice of her

---

[3]     AS 09.10.070(a).

[4]     *Preblich v. Zorea*, 996 P.2d 730, 733, 734 n.11 (Alaska 2000) (citing former AS 09.10.050 (1994)). Spayd's reference to a six-year limitations period for malpractice claims was incorrect. Although the applicable limitations period was formerly six years, it was shortened to three years in 1997. AS 09.10.053; *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 396 (Alaska 2014); *Preblich*, 996 P.2d at 734 n.11. The superior court used the correct statutory period in its subsequent decision.

[5]     *Pedersen v. Zielski*, 822 P.2d 903, 908 (Alaska 1991).

potential cause of action by 2007, and the limitations period for her claims expired by 2013 at the latest — well before the complaint was filed in 2019.

Park moved for a continuance under Alaska Civil Rule 56(f) to obtain additional discovery — specifically to obtain affidavits of expert witnesses.[6] In support of this motion Park submitted an affidavit describing certain details about the timeline of events. She stated that when she complained to the Board of Nursing in 2007, the Board took no action on her complaint. Park did "not pursue the matter further" and at that time "did not know the full extent of [Spayd's] malpractice." But she said that after a 2010 court order in connection with Park's divorce gave Park access to records of the business she had shared with Husseini, Park found Husseini's "extensive drug receipts . . . and realized the full measure of [Spayd's] gross negligence." The superior court granted "a single extension of time" for Park to conduct discovery and file an opposition by January 3, 2020, but indicated that it did not see how the discovery Park sought would be relevant to the limitations issue.

Park then opposed summary judgment. She submitted an affidavit setting forth additional facts relevant to when the limitations period began to run. Park stated that she did not know she had a cause of action against Spayd until Spayd was arrested in October 2019. In regard to Park's complaint about Spayd to the Board of Nursing, Park stated that the Board "told [Park] there was no basis for the complaint" and that she "believed that ended the matter." She further explained that she "did not consider filing

---

   [6]   Alaska R. Civ. P. 56(f) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.").

a civil case until Spayd was arrested [in] 2019 for the same conduct of which [Park] had complained" and that she now believed the Board of Nursing's decision "was wrong."

At a subsequent hearing, Park told the superior court that she had requested discovery from Spayd but had not received it; she asked the court to compel Spayd's response before ruling on summary judgment. The superior court declined, stating that Park had not explained how discovery would be relevant to the limitations issue.

On the day of oral argument Park filed another memorandum with the superior court. Park raised the possibility that Spayd had provided false or misleading information to the Board of Nursing during its investigation undertaken in response to Park's complaint. If so, Park argued, then the limitations period should be tolled or Spayd should be estopped from asserting a limitations defense. Park maintained that she was entitled to discovery of Spayd's correspondence with the Board to explore these issues.

At oral argument, Park again argued that the limitations period should be tolled until Spayd's arrest in October 2019. She also reiterated that discovery of Spayd's communications with the Board was needed to address the limitations defense. The superior court stated on the record that it did not view Spayd's communications with the Board as relevant to the limitations issue.

The superior court ruled that Park's claims were barred by the statute of limitations. The court first determined that Park's negligence claim was subject to a two-year limitations period and that her malpractice claim was subject to a three-year period. The court accepted for purposes of summary judgment the truth of the allegations in Park's complaint and affidavits. Nevertheless it agreed with Spayd's argument that, in light of Park's report to the Board of Nursing in 2007, Park's claims accrued at that time

because Park was aware then of all the elements of her malpractice and negligence claims. It therefore ruled that the limitations period expired in 2010.

The court then rejected Park's argument that Spayd should be estopped from relying on the statute of limitations. The court acknowledged Park's assertion that the Board's inaction on Park's complaint against Spayd must have been the result of Spayd providing misleading information to the Board. But the court concluded that "despite receiving an extension of time to obtain discovery," Park had not presented any evidence indicating fraudulent conduct that she had relied on in declining to file suit earlier.[7]

Finally, the court rejected Park's equitable tolling argument. Observing that the limitations period may be tolled while a party pursues a separate legal remedy, the court reasoned that Park's complaint to the Board of Nursing did not toll the limitations period because the Board did not have authority to give Park any relief for her injuries.

Park moved for reconsideration. She argued that the court's rejection of her equitable estoppel argument for lack of evidence overlooked that the court had allowed Park only a brief extension to obtain discovery and that Spayd had not responded to Park's discovery requests. Park also argued that evidence of Spayd's dishonesty was described in an FBI agent's affidavit submitted in connection with Spayd's 2019 arrest, thus creating a dispute of material fact on the estoppel issue.

The superior court denied reconsideration. Regarding the discovery issue, the court ruled that Park had failed to show that she "exercised due diligence in attempting to uncover the concealed facts" or that further discovery would have yielded

---

[7]      Equitable estoppel requires "evidence of fraudulent conduct upon which [the plaintiff] reasonably relied when forebearing from the suit." *Pedersen*, 822 P.2d at 908-09 (quoting *Gudenau & Co. v. Sweeney Ins.*, 736 P.2d 763, 769 (Alaska 1987)).

material evidence. As to the FBI affidavit, the court observed that although it described egregious conduct by Spayd between 2014 and 2019, it contained no evidence of earlier fraudulent conduct on which Park might have reasonably relied in declining to bring suit.

Park appeals.

## III. STANDARD OF REVIEW

We review de novo a grant of summary judgment and will affirm only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[8] All reasonable inferences are drawn in favor of the non-moving party.[9] "[S]ummary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue."[10]

"[A] non-moving party does not need to prove anything to defeat summary judgment."[11] However "a non-moving party cannot create a genuine issue of material fact merely by offering admissible evidence — the offered evidence must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence."[12] "Any dispute [of fact] must not only be genuine and material[] but [must also] arise from admissible evidence, such as affidavits recounting personal knowledge of specific facts."[13]

---

[8] *Parker v. Tomera*, 89 P.3d 761, 765 (Alaska 2004).

[9] *Id.*

[10] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014).

[11] *Id.* at 516.

[12] *Id.* (emphasis omitted).

[13] *Kaiser v. Sakata*, 40 P.3d 800, 803 (Alaska 2002) (quoting *Brady v. State*, (continued...)

## IV.  DISCUSSION

### A.  Park's Claims Are Barred By The Applicable Limitations Statutes.

A claim that is not filed within the applicable limitations period is barred.[14] A personal injury claim, such as Park's negligence claim against Spayd, must be filed within two years of the date on which the claim accrues.[15]  A professional malpractice claim alleging economic harms, such as Park's malpractice claim alleging damage to her marital business and marital estate, must be filed within three years of the accrual date.[16]

A cause of action generally accrues at the time of injury.[17]  But under the discovery rule, the limitations period does not begin to run until the plaintiff discovers, or reasonably should have discovered, the existence of all essential elements of the cause of action.[18]  The elements of negligence and professional malpractice are duty, breach, causation, and damages.[19]  "We look to the date when a reasonable person has enough

---

[13]      (...continued)
965 P.2d 1, 8 (Alaska 1998)).

[14]      *Miller v. Fowler*, 424 P.3d 306, 311 (Alaska 2018).

[15]      AS 09.10.070(a)(2).

[16]      AS 09.10.053; *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 396 (Alaska 2014) ("Alaska applies a three-year statute of limitations for professional malpractice actions.").

[17]      *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1274 (Alaska 2013).

[18]      *Id.* at 1274-75.  The common-law discovery rule "developed as a means to mitigate the harshness that can result from the [accrual] rule's preclusion of claims where the injury provided insufficient notice of the cause of action to the plaintiff." *Id.* at 1274 (alteration in original) (quoting *Cameron v. State*, 822 P.2d 1362, 1365 (Alaska 1991)).

[19]      *Christianson*, 318 P.3d at 398; *Shooshanian v. Wagner*, 672 P.2d 455, 464
(continued...)

information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights."[20]

The date on which the limitations period begins to run depends on whether the plaintiff actually made an inquiry upon receiving information that should prompt the plaintiff to do so.[21] If the plaintiff did make an inquiry, and if the inquiry was unproductive, the question becomes whether the inquiry was reasonable.[22] If it was reasonable, then the limitations period is tolled until the plaintiff receives either " 'actual knowledge of' the facts giving rise to the cause of action" or "new information which would prompt a reasonable person to inquire further."[23]

The superior court's decision, as well as the parties' briefing and argument on appeal, focus on Park's complaint to the Board of Nursing in 2007. Spayd maintains that by this point in time Park was aware of all the elements of her causes of action: that she had been injured by Husseini's addiction to opiates and that Spayd's conduct was both a breach of the professional duty of care and the cause of Park's injuries. Accordingly, Spayd argues that Park's causes of action accrued in 2007 and were barred by 2010. Park counters by arguing, essentially, that her complaint to the Board — resulting in the Board's decision not to take any action against Spayd — amounted to a

---

[19]    (...continued)
(Alaska 1983).

[20]    *Gefre*, 306 P.3d at 1275 (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988)).

[21]    *See id.*

[22]    *Id.*

[23]    *Id.* (quoting *Cameron*, 822 P.2d at 1367).

reasonable yet unproductive inquiry that tolled the limitations period until Spayd's arrest in 2019. According to Park's affidavit, when the Board "told [her] there was no basis for the complaint," she "believed that ended the matter."

The focus on what happened in 2007 is misplaced. We assume without deciding that Park's complaint to the Board of Nursing was a reasonable yet unproductive inquiry that tolled the limitations period for her claims. Yet by Park's own admission, in 2010 she received new information that would prompt a reasonable person to inquire further.

In 2010 the superior court in the divorce case issued an order allowing Park to access the records of the business she had run with Husseini during the marriage. In an affidavit filed in support of a motion in this negligence case, Park stated: "I did not find Mr. Husseini's extensive drug receipts until I was given a court order to access our business property after remand, and realized the full measure of [Spayd's] gross negligence." At the time Park is referring to in this statement, she was already aware that she had suffered injury as a result of Husseini's addiction (damages) and that Spayd's prescription of opioid medications had contributed to Husseini's addiction (causation). Park's subsequent admission — that she had become aware of Spayd's gross negligence (duty and breach) — meant Park was on notice in 2010 of all the elements of her cause of action against Spayd.[24]

Park argues that the cause of action did not accrue until 2018, the date of Husseini's death, because that is when she suffered the final injury: Husseini would never be able to pay the judgment he owed in the divorce. In other words, Park contends that it was not until Husseini's death that she learned the full extent of her injuries.

---

[24] The elements of negligence and professional malpractice are duty, breach, causation, and damages. *Christianson*, 318 P.3d at 398; *Shooshanian*, 672 P.2d at 464.

But "under the discovery rule it is irrelevant if the full scope of injury is not known immediately."[25] In *Sopko v. Dowell Schlumberger, Inc.* we held that a plaintiff who was aware that he suffered some injury had "sufficient information to prompt an inquiry into his cause of action" even though the full extent of his injury was not known until years later.[26] The same is true of Park. Park was well aware of the injuries to her marriage and finances prior to 2018. Park's complaint alleged that she was "distraught over [Husseini's] drug dependence" in 2005; that "[a]s a direct and proximate result of the emotional and physical addiction from which Husseini suffered, he and Park fought over his addiction, ultimately ending the marriage"; that "[t]heir business was failing because Husseini did not work"; and that "[t]hroughout the pendency of the divorce the value of the marital estate diminished as the direct and proximate result of Husseini's drug dependence." Park and Husseini began divorce proceedings in 2007; their divorce was finalized in 2011. Although Park did not know that Husseini would ultimately die of a drug overdose and fail to pay Park her share of the marital estate, Park was well aware, even before the divorce was finalized in 2011, that she had been injured by Husseini's addiction.

By 2010 Park was also aware that Spayd had a role in that addiction through what Park describes as grossly negligent prescriptions. Park was on notice of all the elements of her negligence and malpractice claims against Spayd. The limitations periods for these claims therefore began to run in 2010 and expired in 2012 and 2013

---

[25]     *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1272 (Alaska 2001).

[26]     *Id.* at 1271-72 (rejecting worker's argument that cause of action did not accrue until he was diagnosed with permanent injury five years after exposure to toxic chemicals when worker experienced physical symptoms immediately following exposure and was diagnosed with "toxic fume exposure" by physician days later).

respectively. Because Park did not file suit against Spayd until 2019, her claims are time-barred.

B.    **Park's Equitable Defenses To The Statute Of Limitations Do Not Save Her Claims.**

Park argues that Spayd should be equitably estopped from raising a statute of limitations defense to Park's claims. To establish equitable estoppel, "a plaintiff must produce evidence of fraudulent conduct upon which [she] reasonably relied when forbearing from suit."[27]    "The fraudulent conduct may be either an affirmative misrepresentation[] or a failure to disclose facts [when] there is a duty to do so."[28]    Park asserts that Spayd must have made fraudulent representations to the Board of Nursing in 2007, leading the Board to take no action on Park's complaint, which in turn caused Park not to file suit. Park further asserts that the superior court erred by faulting Park for not presenting evidence of Spayd's mispresentations even though the court declined to order Spayd to respond to Park's discovery requests.

The focus on the Board of Nursing's investigation — and any misrepresentations Spayd may have made during that process — is again misplaced. Park stated that she realized Spayd's negligence upon seeing Husseini's prescription receipts in 2010. Even if it was reasonable for Park to view the Board's inaction against Spayd as an indication that Spayd had not been negligent, it was not reasonable for Park to continue relying on the Board's inaction once she independently realized in 2010 that Spayd had been grossly negligent. Therefore Park cannot establish that she reasonably

---

[27]    *Gudenau & Co. v. Sweeney Ins.*, 736 P.2d 763, 768 (Alaska 1987).

[28]    *Waage v. Cutter Biological Div. of Miles Lab'ys, Inc.*, 926 P.2d 1145, 1149 (Alaska 1996).

relied on false statements Spayd may have made to the Board of Nursing.[29]  Equitable estoppel does not apply.

In her reply brief, Park raises for the first time the issue of equitable tolling, which the superior court ruled did not apply.  Because Park failed to address equitable

---

[29]  For this reason, Park's assertion that the superior court erred by not giving her more time to conduct discovery and by not compelling discovery into Spayd's communications with the Board of Nursing, even if true, does not affect the outcome of this case.  Even if discovery showed that Spayd had lied to the Board, Park could not show that she reasonably relied on those misrepresentations in light of her independent discovery of Spayd's negligence.

Nevertheless, we are troubled by the suggestion in the superior court's order that Park was somehow responsible for not producing evidence in support of her equitable estoppel argument.  Park sought and received a short extension to pursue discovery.  After this extension of time had expired, Park told the superior court that she had not received the discovery she needed and asked the court to compel it.  The court denied the request, stating that Park had not adequately explained the relevance of discovery to the limitations issue.  When Park explained at oral argument why discovery into Spayd's communications with the Board could be relevant to the estoppel issue, the court disagreed, stating this evidence would not be relevant.  Yet the court's summary judgment order implicitly conceded the potential relevance of this discovery by faulting Park for "not provid[ing] this court with any facts suggesting the existence of fraudulent conduct upon which she relied when refraining from filing suit."

We emphasize that superior courts should hold "self-represented litigants . . . to a less demanding procedural standard," and take a "lenient approach" in construing their motions.  *Daggett v. Feeney*, 397 P.3d 297, 304 n.19 (Alaska 2017) (quoting *Mitchell v. Mitchell*, 370 P.3d 1070, 1083 (Alaska 2016)); *Regina C. v. Michael C.*, 440 P.3d 199, 205 n.25 (Alaska 2019) (quoting *Sengupta v. Univ. of Alaska*, 139 P.3d 572, 581 (Alaska 2006)).  Although true that Park did not adequately explain the relevance of discovery in her initial motion to compel, she ultimately did explain its relevance.  It was therefore problematic for the court to reject Park's estoppel argument for lack of evidence after having denied her request to obtain evidence on this point.  But as we explained above, any error is harmless because of Park's independent discovery of Spayd's negligence in 2010.

tolling in her opening brief, the argument is waived.[30]  Yet even if the issue had been preserved, equitable tolling would not make Park's claims timely.

Equitable tolling applies "when a plaintiff has multiple legal remedies available to [her].  Courts will not force a plaintiff to simultaneously pursue two separate and duplicative remedies."[31]  Accordingly the limitations period for the second remedy is tolled while the plaintiff pursues the first remedy.

We have held that when litigation as to the first remedy terminates, a new limitations period begins to run for the remaining remedy.[32]  Park filed her complaint with the Board of Nursing in 2007.  Although the record does not disclose precisely when the Board informed Park that it was closing its investigation, Park indicated that the investigation was closed before her divorce was finalized in 2011.  Even assuming equitable tolling applied,[33] a new three-year limitations period would have begun to run

---

[30]    *See, e.g.*, *Eberhart v. Alaska Pub. Offs. Comm'n*, 426 P.3d 890, 894-95 (Alaska 2018) (declining to consider issue raised for the first time in reply brief).

[31]    *Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 884 (Alaska 2006) (quoting *Gudenau & Co.*, 736 P.2d at 769).

[32]    *Id.* at 885-86 (noting that "we have uniformly applied a new full statutory period in equitable tolling cases," although declining to decide "whether a plaintiff will always have the full statutory limitations period in which to file once the circumstances that justify equitable tolling abate").

[33]    *Id.* at 884 ("[T]he statute of limitations is tolled only for those who initially pursue their rights in a judicial or quasi-judicial governmental forum." (quoting *Gudenau & Co.*, 736 P.2d at 768)).

once the Board's investigation closed, expiring well before Park filed suit in 2019. Therefore neither equitable estoppel nor equitable tolling saves Park's untimely claims.[34]

## V.    CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[34]    Park's brief requests that we "[d]ismiss" the superior court's order on attorney's fees. Yet she did not appeal the superior court's award of attorney's fees and does not present any argument for why the award is erroneous. Any challenge to the award of attorney's fees is therefore waived.